Mark R. Thierman NV  #8285
laborlawyer@pacbell.net
**THIERMAN LAW FIRM**
7287 Lakeside Drive
Reno, Nevada  89511
Telephone: (775)284-1500

David R. Markham, CA Bar #071814
dmarkham@clarkmarkham.com
**CLARK & MARKHAM LLP**
600 B Street, Suite 2130
San Diego, CA  92101
(619)399-3995

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KIMBERLEY DAPRIZIO, NICOLE MCDONAGH, DAVID GRUCELLO, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>HARRAH'S LAS VEGAS, INC., HARRAH'S ENTERTAINMENT, LLC, and DOES 1 through 50, inclusive,<br><br>Defendants.<br>_____ | Case No. 2:10-cv-00604<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND COMPLAINT**<br><br>[FILED CONCURRENTLY WITH PROPOSED FIRST AMENDED COMPLAINT] |

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

Pursuant to Local Rule 7-2, Plaintiff KIMBERLEY DAPRIZIO, on behalf of herself and all others similarly situated, hereby moves the Court to allow her to file an amended complaint adding two

new class representatives and refining the class definition. This motion is authorized by Federal Rules of Civil Procedure, Rule 15.

**INTRODUCTION**

Plaintiff makes this motion to amend the complaint to add two new class representatives, David Grucello and Nicole McDonagh. The addition of the new representatives is necessary for two reasons. First, in recent deposition discovery, it has come to light that representative Kimberley Daprizio has filed for bankruptcy, raising issues which will need to be litigated later as to her adequacy as a class representative. Second, as the Court will recall, this case arises from Harrah's practice of holding pre-shift meetings with dealers and other employees, and not paying them for the meeting time. It has also come to light in discovery that Harrah's actually has two different types of dealers: Dealers and Dual-Rate Supervisors. The latter worked part time as dealers and part time as pit bosses, but were classified as hourly non-exempt employees, were required to attend pre-shift meetings without pay, and were also subject to different meeting procedures and attended different meetings than the Dealers. Because there are also issues as to whether Kimberley Daprizio, a Dealer, can therefore adequately represent the Dual-Rate Supervisors, plaintiff also seeks to add a Dual Rate Supervisor, Nicole McDonagh, as an additional class representative.

Finally, the proposed amended complaint substantially reduced the proposed class size by narrowing the class definition. The original complaint defines the class as including all hourly employees subject to the pre-shift meeting practice at all Harrah's Entertainment casino properties in Nevada. The proposed amended complaint limits the proposed class members to (1) Dealers and Dual-Rate Supervisors, (2) in the Harrah's casino in Las Vegas. Harrah's Entertainments is therefore not prejudiced by the proposed amendment.

**POINTS AND AUTHORITIES**

**A.  Applicable Rules**

Rule 15(a)(2) provides that "A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

1  Plaintiff has requested consent from Defendant to amend, which consent was not given.  Plaintiff
2  therefore seeks the Court's leave.
3        The Ninth Circuit holds that leave to amend shall be freely given when justice so requires and
4  this rule should be applied with "extreme liberality."  *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1482 (9th
5  Cir. 1997).  Further,

> Courts appear to be particularly amenable to permissive intervention when no additional issues are presented to the case, when the intervenor's claims are "virtually identical" to these class claims, and when intervention would strengthen the adequacy of representation.

Conte & Newberg, *Newberg on Class Actions* (4th ed.), §16:8, at 167-68.  In the Second Circuit, intervention was allowed to better represent the "different aspect of class identity:"

> Designation of Mssrs. Ciesluk, Griffith, and Bernschtein as additional class representatives adds diversity to the group of class representatives and enhances the likelihood that many different aspects of the class identity will be reflected among its representatives.

*Lewis v. Gross,* 663 F.Supp. 1164, 1173 (E.D.N.Y. 1986).  While this is simply an amendment rather than a motion to intervene, the same principles of strengthening adequacy, adding diversity, and enhancing the reflection of the class support granting the proposed amendment.

    **B.  Scheduling Order**

      Magistrate Judge Robert J. Johnston stated in Section IV of the Scheduling Order, Doc. 51, that "In the event that the Court finds that the Plaintiff is an inadequate class representative for purposes of Rule 23, Plaintiff may seek to amend her complaint to add new class representatives."  Doc. 51, p. 3.  Since the Scheduling Order was entered, discovery has revealed that representative Daprizio may potentially be challenged as a proper representative.  Specifically, the parties learned during her deposition of a subsequent bankruptcy filing which may affect her claims.  These issues are more fully discussed below.  Additionally, Daprizio's deposition elicited questioning and responses which indicate that her knowledge is limited to Dealers and not Dual-Rate Supervisors.  Accordingly, the instant request is within the parameters of the Scheduling Order.

    **C.  Refining Class Definition**

The class under Rule 23 has been defined in this original complaint as follows:

> All persons who were, are, or will be employed by defendant HARRAH'S LAS VEGAS, INC., and HARRAH'S ENTERTAINMENT, LLC, as hourly-shift employees who are required, suffered, or permitted to attend pre-shift management meetings without pay.

Complaint, ¶15.  As discovery has progressed, Plaintiffs have learned that the more appropriate definition is all persons who were employed "as Dealers who are required . . . to attend pre-shift meetings."  This refining in fact reduces the size of the class in favor of Defendants.  Further, there is a subset of the Dealer group, those Dealers who are sometimes assigned as pit bosses, the Dual-Rate Supervisors.   This distinction, which surfaced during depositions, has prompted Plaintiffs to determine that adding a named representative from this group would more completely represent the universe of class employees seeking redress of the same alleged harm.  Accordingly, Plaintiffs propose a new class definition as follows:

> All persons who were, are, or will be employed by defendant HARRAH'S LAS VEGAS, INC., and any and all of its subsidiaries who are employed as Dealers and Dual-Rate Supervisors who are required, suffered or permitted to attend pre-shift management meetings by defendant HARRAH'S LAS VEGAS, INC.

Proposed First Amended Complaint, ¶21.  Amending the complaint at this stage of discovery will eliminate the need to litigate the class definition closer to trial, when adding representatives from this group will serve the ends of justice and promote judicial efficiency by allowing the case to proceed on its merits.

### D. Current Named Representative Daprizio

Current Class Representative Kimberley Daprizio is a Dealer, and is representative of all Dealers who are required to attend pre-shift meetings before clocking in.  She is not, however, a Dual-Rate Supervisor.  Plaintiffs therefore propose adding as a representative named class member Nicole McDonagh, a Dual-Shift Supervisor required to attend buzz meetings without compensation.

Second, Class Counsel recently learned, during Ms. Daprizio's deposition, that she filed for bankruptcy protection after the filing of this complaint.  Under current Ninth Circuit jurisprudence, there is a *question* as to whether she could be judicially estopped from pursuing the present claims, as she apparently was not advised to list this lawsuit as a potential asset or claim.

In *Yack v. Washington Mutual, Inc.,* 389 B.R. 91 (N.D.Cal. 2008), the court noted that "The Bankruptcy Code . . . places an affirmative duty on debtors to schedule their assets and liabilities with the bankruptcy court, including potential causes of action." 389 B.R. at 95. As mentioned, Daprizio failed to report this lawsuit as a potential asset. The Ninth Circuit has held, under some circumstances, that failure to list a pending cause of action in the debtor's schedule renders that party judicially estopped from pursuing it later:

> In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir. 1992)(failure to give notice of a potential cause of action in bankruptcy schedules and disclosure statements estops the debtor from prosecuting that cause of action).

*Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir. 2001). However, courts have declined to apply judicial estoppel in the absence of some showing of bad faith:

> The district court found that Ryan's failure to list its potential claims arising from the Ponderosa Pine trim on its schedule of assets in the Chapter 11 proceeding constituted a statement that Ryan had no such claim, which the current lawsuit contradicts. . . . It is undisputed that by failing to list its claims against defendants on its §521 schedule of assets, Ryan violated these statutory duties of full disclosure. . . . We conclude that judicial estoppel would be inappropriate in any event as there is no evidence that Ryan acted in bad faith.

*Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 361-62 (3d Cir. 1996). The Ninth Circuit has made it clear that judicial estoppel does not apply unless the inconsistent statements are willful: "Judicial estoppel applies when a party's position is 'tantamount to a knowing misrepresentation to or even fraud on the court.'" *Johnson v. State, Oregon Dept. of Human Resources, Rehabilitation Div.,* 141 F.3d 1361, 1368 (9th Cir. 1998)(citing *Ryan Operations, supra,* at 362-63). The court in *Helfand v. Gerson,* 105 F.3d 530, 534 (9th Cir. 1997), also emphasized that intentional conduct is required before invoking the doctrine:

> "Judicial estoppel, sometimes also known as the doctrine of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Risetto v. Plumbers &*

*Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir. 1996). . . . Judicial estoppel seeks to prevent the deliberate manipulation of the courts; it is inappropriate, therefore, a party's prior position was based on inadvertence or mistake.

105 F.3d at 534-36. In the present case, the failure of a class representative to list a lawsuit as a potential asset can be excused as inadvertent, especially given the contingent nature of the asset and the uncertain vesting date, if any. Further, speculation as to the amount of any incentive award would also be of dubious value. Finally, there can be no argument that the failure by Daprizio to list this claim on her schedules had any cognizable effect on discharging the bankruptcy. Accordingly, it would be "inappropriate" under *Helfand* to apply judicial estoppel under these circumstances.

This information is provided to the Court in an abundance of caution, as Defendants have not yet challenged Ms. Daprizio. To resolve this potential issue, Plaintiffs propose adding another class representative for the Dealers, David Grucello. This would have the laudable effect of "strengthening" the adequacy of representation, within the principles discussed by Mssrs. Newberg and Conte.

### E. Application of Factors Supporting Leave to Amend

While leave to amend is solidly within the Court's discretion, there are typically five factors courts weigh: 1) bad faith; 2) undue delay; 3) prejudice to the opposing party; 4) futility of amendment; and 5) whether plaintiff has previously amended his complaint. *Western Shoshone Nat'l Council v. Molini,* 951 F.2d 200, 204 (9th Cir. 1991). None of these factors weighs *against* allowing amendment under the present circumstances.

There can be no bad faith allegations against Plaintiffs with respect to this request to amend. Plaintiff class has simply discovered potential issues with respect to the current named representative, and desires to continue pursuing this litigation with all due diligence toward its resolution, rather than waiting to have the litigation derailed due to typicality or adequacy problems closer to trial. There will be no need to litigate the issue later, when allowing an amendment will moot these issues.

There has been no undue delay. When recent discovery indicated that the class definition and representation needed redefining and bolstering, Plaintiffs have promptly raised the issue with the Court with the goal of streamlining the litigation and conserving judicial resources.

1    Defendants can claim no prejudice.  In fact, the amendment benefits Defendants by narrowing
2 the class.  Discovery with respect to class certification has been completed by the end of October, and
3 Plaintiffs will provide the proposed representatives McDonagh and Grucello for deposition at a mutually
4 convenient time.
5    The amendment is not futile.  It is proposed to advance, rather than stymie, the progress of the
6 litigation.  It achieves resolution of potential deficiencies in a timely fashion rather than addressing them
7 after discovery has closed.
8    Finally, Plaintiffs have not previously amended their complaint.

### F.  Conclusion

Plaintiffs have adequately demonstrated that allowing leave to amend the complaint in this matter will further the ends of justice within the meaning of Rule 15.  Leave to amend should be freely given.  Plaintiffs have brought this motion to cure potential issues with respect to the named representative, and bolster the diversity of representation in the best interests of the class as a whole.  Defendants cannot claim any prejudice from allowing this amendment.  Accordingly, Plaintiffs request that the Court allow this amendment and order the Proposed First Amended Complaint the operative complaint in this matter.

Dated:  November 9, 2012                                       **THIERMAN LAW FIRM**


By:/s/Mark R. Thierman
Mark R. Thierman, NV #8285
7287 Lakeside Drive
Reno, Nevada  89511
Tel:  (775)284-1500

**CLARK & MARKHAM LLP**
David R. Markham, CA Bar #071814
600 B Street, Suite 2130
San Diego, CA  92101
Tel:  (619)399-3995

*Attorneys for Plaintiff*

Mark R. Thierman NV  #8285
laborlawyer@pacbell.net
**THIERMAN LAW FIRM**
7287 Lakeside Drive
Reno, Nevada  89511
Telephone: (775)284-1500

David R. Markham, CA Bar #071814
dmarkham@clarkmarkham.com
**CLARK & MARKHAM LLP**
600 B Street, Suite 2130
San Diego, CA  92101
(619)399-3995

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KIMBERLEY DAPRIZIO, NICOLE MCDONAGH, DAVID GRUCELLO, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HARRAH'S LAS VEGAS, INC., HARRAH'S ENTERTAINMENT, LLC, and DOES 1 through 50, inclusive,<br><br>Defendants.<br>_____ | Case No. 2:10-cv-00604<br><br>**[PROPOSED] FIRST AMENDED CLASS ACTION AND COLLECTIVE ACTION COMPLAINT FOR WAGES FOR WORKING OFF THE CLOCK PURSUANT TO NRS 608.0116, FAILURE TO PAY AT TERMINAITON ALL WAGES DUE PURSUANT TO NRS 608.030/040 AND THE FEDERAL FAIR LABOR STANDARDS ACT, 29 U.S.C. §216(B)**<br><br>(JURY DEMAND) |

COME NOW PLAINTIFFS KIMBERLEY DAPRIZIO, NICOLE MCDONAGH, DAVID GRUCELLO, on behalf of themselves, and all others similarly situated, and allege:

1
**[Proposed] First Amended Complaint**

**INTRODUCTION**

1. Plaintiffs allege that hourly shift employees are entitled by both state and federal law to be paid at the higher of A) their regular rate of pay, B) the minimum wage, and/or C) the appropriate overtime wage rate for all hours worked for the time that Defendants, and each of them, required, suffered and/or permitted each hourly shift employee under its control, to arrive at work at least 10 to 15 minutes before each shift begins without pay in order to attend a management-conducted meeting to receive shift-change instructions.

2. Plaintiffs allege that such systematic scheduling of these pre-shift meetings must be compensated despite the federal Portal to Portal Act exception to the Fair Labor Standards Act because this work was part of a principal activity of the Defendants, and such time was not *de minimis* for the reasons so stated in *Hesseltine v. Goodyear Tire & Rubber Co.,* 391 F.Supp.2d 509, 517 (E.D.Tex. 2005)(person-to-person shift relief policy compensable).

3. Plaintiffs allege that employee time spent at these mandatory pre-shift company meetings must be compensated under NRS 608.0116 because Nevada has not adopted the federal Portal to Portal Act or any provision similar to it under the rationale of *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 588 (2000)("we conclude that the federal statutory scheme, which differs substantially from the [California] state scheme, should be given no deference).

4. And as to those terminated from employment, Plaintiffs allege Defendants' failure to pay for this time worked also violates NRS 608.030 which gives rise to a claim for wages due under NRS 608.040 for which there is a private cause of action pursuant to NRS 608.050.

**JURISDICTION AND VENUE**

5. Pursuant to section 16(b) of the Fair Labor Standards Act, 29 U.S.C.§216(b), this court has original jurisdiction over these claims by PLAINTIFFS KIMBERLEY DAPRIZIO, NICOLE MCDONAGH, AND DAVID GRUCELLO, and all others similarly situated, who file a consent to sue within three years of the acts complained of herein.

6. Pursuant to the Class Action Fairness Act, 29 U.S.C. §1334(d), this Court has jurisdiction over this class action for all instances of the acts complained of herein performed within three years of the filing of this complaint which are alleged to be a violation of the provisions of a Nevada state statute that

2
**[Proposed] First Amended Complaint**

does not otherwise have a specific statute of limitations.  The amount in controversy far exceeds $5 million and there is the requisite minimum diversity of citizenship between the members of the class and Defendants.

7. Venue is proper in this Court because each Defendant resides, the work was performed, and the wages were paid, in Clark County, Nevada.

## PARTIES

8. PLAINTIFF KIMBERLEY DAPRIZIO is a resident of Clark County and has been employed for more than three years by defendant HARRAH'S LAS VEGAS, INC., as a Dealer in its Las Vegas facility.

9. PLAINTIFF DAVID GRUCELLO is a resident of Clark County and has been employed for more than three years by defendant HARRAH'S LAS VEGAS, INC., as a Dealer in its Las Vegas facility.

10. PLAINTIFF NICOLE MCDONAGH is a resident of Clark County and has been employed for more than three years by defendant HARRAH'S LAS VEGAS, INC., as a Dual-Rate Supervisor in its Las Vegas facility.

11. Defendant HARRAH'S LAS VEGAS, INC. is a Nevada corporation which operates a hotel and casino within the State of Nevada, and is the direct employer of Plaintiff and hundreds of other similarly-situated hourly-shift employees.

12. Defendant HARRAH'S ENTERTAINMENT, LLC, is a Nevada limited liability company which maintains its offices in Las Vegas, Nevada.  Upon information and belief, defendant HARRAH'S ENTERTAINMENT, LLC, exercises direct control over the hours and wages of Defendant HARRAH'S LAS VEGAS, INC., and all similarly-situated hourly-shift employees at all its hotel and casino subsidiaries and is the source of the policy of requiring workers to attend pre-shift meetings without pay complained of herein.

13. Defendants Does 1 through 50, inclusive, are sued herein under fictitious names.  Their true names and capacities are unknown to Plaintiffs.  When the true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants are responsible

in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by those Defendants.  Each reference in this complaint to Defendant or Defendants, refers also to all Defendants sued under fictitious names.

## COLLECTIVE ACTION ALLEGATIONS

14. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Amended Complaint as though fully set forth herein.

15. At all material times mentioned herein, Plaintiff DAPRIZIO is and was:
   (a) An individual who resides in Las Vegas, Nevada;
   (b) Employed as an hourly shift-worker with the title of Dealer for defendant HARRAH'S LAS VEGAS, INC., in the State of Nevada;
   (c) Pursuant to a policy originated by Defendant HARRAH'S ENTERTAINMENT, LLC, and implemented by its subsidiary HARRAH'S LAS VEGAS, INC., was required, suffered and/or permitted to attend pre-shift meetings which lasted at least 10 to 15 minutes each day in order to receive instructions from the departing shift supervisors for the benefit of her employer;
   (d) Was not paid her hourly rate of pay for the time spent at such meetings;
   (e) Was not paid the federal minimum wage for the time spent at such meetings;
   (f) Was not paid a rate of pay equal to or greater than one and one-half her regular hourly rate of pay when she was required, suffered or permitted to spend this time at such pre-shift meetings which caused her to work more than forty hours in such weeks;
   (g) Is a member of the Collective Class of this Amended Complaint;
   (h) Has signed a consent to sue which either has been or shortly will be filed in this Court.

16. At all material times mentioned herein, Plaintiff GRUCELLO is and was:
   (a) An individual who resides in Las Vegas, Nevada;
   (b) Employed as an hourly shift-worker with the title of Dealer for defendant HARRAH'S LAS VEGAS, INC., in the State of Nevada;
   (c) Pursuant to a policy originated by Defendant HARRAH'S ENTERATINMENT, LLC, and implemented by its subsidiary HARRAH'S LAS VEGAS, INC., was required, suffered

and/or permitted to attend pre-shift meetings which lasted at least 10 to 15 minutes each day in order to receive instructions from the departing shift supervisors for the benefit of her employer;

(d) Was not paid his hourly rate of pay for the time spent at such meetings;

(e) Was not paid the federal minimum wage for the time spent at such meetings;

(f) Was not paid a rate of pay equal to or greater than one and one-half her regular hourly rate of pay when he was required, suffered or permitted to spend this time at such pre-shift meetings which caused him to work more than forty hours in such weeks;

(g) Is a member of the Collective Class of this Amended Complaint;

(h) Has signed a consent to sue which either has been or shortly will be filed in this Court.

17. At all material times mentioned herein, Plaintiff MCDONAGH is and was:

(a) An individual who resides in Las Vegas, Nevada;

(b) Employed as an hourly shift worker with the title of Dual-Rate Supervisor for defendant HARRAH'S LAS VEGAS, INC., in the State of Nevada;

(c) Pursuant to a policy originated by Defendant HARRAH'S ENTERATINMENT, LLC, and implemented by its subsidiary HARRAH'S LAS VEGAS, INC., was required, suffered and/or permitted to attend pre-shift meetings which lasted at least 10 to 15 minutes each day in order to receive instructions from the departing shift supervisors for the benefit of her employer;

(d) Was not paid her hourly rate of pay for the time spent at such meetings;

(e) Was not paid the federal minimum wage for the time spent at such meetings;

(f) Was not paid a rate of pay equal to or greater than one and one-half her regular hourly rate of pay when she was required, suffered or permitted to spend this time at such pre-shift meetings which caused her to work more than forty hours in such weeks;

(g) Is a member of the Collective Class of this Amended Complaint;

(h) Has signed a consent to sue which either has been or shortly will be filed in this Court.

18. All claims involving the Collective Class have been brought and may properly be maintained as a collective action under 29 U.S.C. §216 because there is a well-defined community of interest in the

litigation and the proposed Collective Class is easily ascertainable by examination of the employment records that Defendants are required to maintain by law, including but not limited to, employee time clock reports and payroll records and policy directives.

## NEVADA STATE LAW CLASS ACTION ALLEGATIONS

19. Plaintiffs reallege and incorporate herein by this reference all the paragraphs above in this Amended Complaint is though fully set forth herein.

20. As Dealer and Dual-Shift Supervisors employed by defendant HARRAH'S LAS VEGAS, INC., in the State of Nevada, pursuant to a pay and employment policy required by HARRAH'S ENTERTAINMENT, LLC, of all its subsidiaries within this State, PLAINTIFFS seek to represent classes of all persons who were, are, or will be employed by defendant HARRAH'S LAS VEGAS, INC., as Dealers or Dual-Rate Supervisors who were and are required, suffered, or permitted to attend pre-shift management meetings without pay.

21. The proposed state law class definition is:

> All persons who were, are, or will be employed by defendant HARRAH'S LAS VEGAS, INC., as Dealers or Dual-Rate Supervisors between the dates of April 27, 2007 and the present, who were, are, or will be required, suffered or permitted to attend pre-shift meetings by defendant HARRAH'S LAS VEGAS, INC.

22. Plaintiff DAPRIZIO is a member of the Dealer category of the proposed Nevada State Class, is typical of all Dealers of each Nevada State Class, has a common issue of law and/or fact with all members of each Nevada State Class in whether the employer does and is legally entitled to require this unpaid pre-shift time (round off) in the manner in which it has, and she will adequately represent the class.  The class is easily ascertainable from the records that the employer is required by law to maintain. When available, a true opt-out class action is superior to individual actions because it would be unjust to allow the Defendants to benefit from their unlawful behavior solely because the cost of litigating individual claims would be prohibitive compared to the expected damages unless aggregated, and because the claims are different legally (i.e., NRS 608.0116 has no Portal to Portal Act exception), nor are damages the same (i.e., the FLSA does not provide for thirty days of full wages for underpaid terminated employees as does NRS 608.030/608.040).

23. Plaintiff GRUCELLO is a member of the Dealer category of the proposed Nevada State Law Class, is typical of all Dealers of the Nevada State Class, has a common issue of law and/or fact with all members of each Nevada State Class in whether the employer does and is legally entitled to require this unpaid pre-shift time (round off) in the manner in which it has, and he will adequately represent the class.  The class is easily ascertainable from the records that the employer is required by law to maintain. When available, a true opt-out class action is superior to individual actions because it would be unjust to allow the Defendants to benefit from their unlawful behavior solely because the cost of litigating individual claims would be prohibitive compared to the expected damages unless aggregated, and because the claims are different legally (i.e., NRS 608.0116 has no Portal to Portal Act exception), nor are damages the same (i.e., the FLSA does not provide for thirty days of full wages for underpaid terminated employees as does NRS 608.030/608.040).

24. Plaintiff MCDONAGH is a member of the Dual-Rate Supervisor category of the proposed Nevada State Law Class, is typical of all members of each Nevada State Class, has a common issue of law and/or fact with all members of each Nevada State Class in whether the employer does and is legally entitled to require this unpaid pre-shift time (round off) in the manner in which it has, and she will adequately represent the class.  The class is easily ascertainable from the records that the employer is required by law to maintain.  When available, a true opt-out class action is superior to individual actions because it would be unjust to allow the Defendants to benefit from their unlawful behavior solely because the cost of litigating individual claims would be prohibitive compared to the expected damages unless aggregated, and because the claims are different legally (i.e., NRS 608.0116 has no Portal to Portal Act exception), nor are damages the same (i.e., the FLSA does not provide for thirty days of full wages for underpaid terminated employees as does NRS 608.030/608.040).

## FACTS

25. Defendant HARRAH'S LAS VEGAS, INC. employs hundreds of Dealers and Dual-Rate Supervisor employees like Plaintiffs who are subject to the same policy of attending non-paid company-required pre-shift meetings.

26. Defendant HARRAH'S LAS VEGAS, INC. established and/or maintains this policy at the directive or upon instruction by defendant HARRAH'S ENTERTAINMENT. LLC.

27. As a result of this policy, all Dealers and Dual-Rate Supervisors employed directly by defendant HARRAH'S LAS VEGAS, INC. must, as a condition of their employment, report to work at least 10 to 15 minutes before their shift begins, without pay, in order to attend a management meeting in which they are given instructions for the operation of their upcoming shift.

28. Upon information and belief, Plaintiffs allege that there have been multiple complaints to the management of Defendants that the policy is unlawful, but no Defendant has taken any corrective action, and the practice continues to this date.

29. Plaintiff DAPRIZIO was threatened with employment discipline if she did not report early to attend these mandatory pre-shift meetings, and her complaints about them were ignored.

### FIRST CAUSE OF ACTION

Violation of Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA")

(By Plaintiffs and the Collective Class against Defendants)

30. Plaintiffs reallege and incorporate by this reference all allegations contained above as though fully set forth herein.

31. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, Plaintiffs and the members of the Class are entitled to compensation at their regular rate for all hours actually worked, and are also entitled to wages at a rate not less than one and one-half times their regular rate of pay for all hours actually worked, and are also entitled to wages at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty hours in any workweek.

32. Defendants are engaged in communication, business, and transmission throughout the United States and are, therefore, engaged in commerce within the meaning of 29 U.S.C. 203(b).

33. 29 U.S.C. section 206(a)(1) provides that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:  (1) except as otherwise provided in this section, not less than (A) $5.85 an hour beginning on the 60th day after the enactment of the Fair Minimum Wage Act of 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and (C) $7.25 an hour, beginning 24 months after that 60th day.

34. 29 U.S.C. section 207(a)(1) provides tin pertinent part: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times that regular rate at which he is employed."

35. There is no exception from the provisions of 29 U.S.C. sections 206(a)(1) and/or 207(a)(1) applicable to the Plaintiffs and all other hourly-shift and dual-shift supervisors paid hourly, who constitute the class herein.

36. 29 U.S.C. section 255 provides that a three-year statute of limitations applies to willful violations of the FLSA.

37. The conduct complained of herein is a part of the principal activity of the Defendants, necessary for its business operations, not incidental, and not *de minimis* individually or in the aggregate.

38. At all relevant times, Defendant failed to pay Plaintiffs and the other members of the Class their regular rate for all hours worked by not paying them anything for time spent at mandatory management pre-shift meetings.

39. In addition, Defendants failed to pay Plaintiffs and the other members of the Class the minimum wages for all hours worked by not paying them anything for time spent at mandatory management pre-shift meetings.

40. And, when applicable, Defendants failed to pay Plaintiffs and the other members of the Class overtime compensation for the hours they worked in excess of the maximum hours permissible by law as required by section 207 of the FLSA by not paying them anything for time spent at mandatory management pre-shift meetings.

41. Plaintiffs propose to undertake the appropriate proceedings to have the Collective Class members, aggrieved by Defendants' unlawful conduct, notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. section 216(b).

42. Therefore, Plaintiffs demand that they and the members of the federal Collective Class be paid wages at the higher of (1) their regular rate for all hours worked, including time spent at such pre-shift

9
**[Proposed] First Amended Complaint**

management meetings; (2) the minimum hourly wage for all time spent at such pre-shift management meetings; or (3) when applicable, the appropriate overtime hourly premium rate as required by the FLSA for all time spent at such pre-shift management meetings as provided by law.

43. Because the actions of Defendants were without substantial justification as required by 29 U.S.C. section 260, Plaintiffs request the amount of damages be doubled, not as a penalty, but in lieu of interest and as liquidated damages as provided in 29 U.S.C. section 216 (b).

## SECOND CAUSE OF ACTION

Violation of NRS 608.016 and 608.030

(By Plaintiff and the Nevada State Classes against Defendants)

44. Plaintiffs reallege and incorporate by this reference all allegations contained above as though fully set forth herein.

45. By the conduct described above, Defendants have violated the provisions of Nevada Revised Statutes (NRS) 608.016, which provides "An employer shall pay to the employee wages for each hour the employee works.  An employer shall not require an employee to work without wages during a trial or break-in period."

46. By the conduct described above, Defendants have violated the provisions of NRS 608.030, which provides that whenever an employee resigns or quits his or her employment, the wages and compensation earned and unpaid at the time of the employee's resignation or quitting must be paid no later than (1) the day on which the employee would have regularly been paid the wages or compensation; or (2) seven days after the employee resigns or quits, whichever is earlier.

47. The consequence of violation of NRS 608.030 is contained in NRS 608.040(1), which states that if an employer fails to pay: (a) within three days after the wages or compensation of a discharged employee becomes due; or (b) on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less.

48. NRS 608.050 expressly gives the terminated employees a private cause of action to collect these sums when it states:  "Whenever an employer of labor shall discharge or lay off employees without first paying them the amount of any wages or salary then due them, in cash and lawful money of the United

States, or its equivalent, or shall fail, or refuse on demand, to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week, or month, each of the employees may charge and collect wages in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default.  2.  Every employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as the employee would have been entitled to, had the employee rendered services therefor in the manner as last employed.

49. Therefore, Plaintiffs demand that they and the members of the Nevada State Class be paid wages at their regular rate for all hours worked including time spent at pre-shift mandatory management meetings, plus interest and attorneys' fees as provided by law.

50. In addition, Plaintiffs demand that those members of the Nevada State Class who have been terminated but who were not paid all wages due for time spent and the aforesaid pre-shift management meetings, be paid the thirty full days' of wages plus interest and attorneys' fees as provided by law.

## **REQUEST AND PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants in favor of Plaintiffs and the Collective Class and the Nevada Class as follows:

1. That Defendants be required to pay compensatory damages to the PLAINTIFFS and members of the Class, in an amount to be determined at trial but in no event less than $5,000,000;

2. Awarding PLAINTIFFS and the Class their reasonable attorneys' fees and investigative costs;

3. Awarding PLAINTIFFS and the Class pre-judgment interest as provided by law;

4. Awarding PLAINTIFFS and the Class their costs of the suit herein incurred;

5. Awarding PLAINTIFFS and the Collective Class liquidated damages pursuant to 29 U.S.C. section 216(b);

6. Awarding PLAINTIFFS and the Class such other and further relief as may be just and proper.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated:  November 9, 2012 | **THIERMAN LAW FIRM** |
| 3 | | |
| 4 | | |
| 5 | | By:/s/Mark R. Thierman<br>Mark R. Thierman, NV #8285 |
| 6 | | 7287 Lakeside Drive<br>Reno, Nevada  89511 |
| 7 | | Tel:  (775)284-1500 |
| 8 | | **CLARK & MARKHAM LLP** |
| 9 | | David R. Markham, CA Bar #071814<br>600 B Street, Suite 2130 |
| 10 | | San Diego, CA  92101<br>Tel:  (619)399-3995 |
| 11 | | |
| 12 | | *Attorneys for Plaintiff* |